Henry Trueheart BROWN, et al., Appellants,

v.

GETTY RESERVE OIL, INC., et al., Appellees.

No. 9297.

Court of Appeals of Texas, Amarillo.

Dec. 17, 1981.

Rehearing Denied Jan. 20, 1982.

Lemon, Close, Atkinson & Shearer, Edward L. Atkinson, Amarillo, for appellants.

Biggers, Beasley, Amerine & Earle, John C. Biggers, Jeffrey A. Hage, Dallas, Linn, Helms, Kirk & Burkett, J. D. Helms, Oklahoma City, Okl., Underwood, Wilson, Berry, Stein & Johnson, Amarillo, Gassaway, Gurley, Sheets & Mitchell, Borger, for appellees.

Before REYNOLDS, C. J., and DODSON, J.

DODSON, Justice.

In this interpleader action, the trial court rendered summary judgment unitizing Sections 27 and 29, Block One (1), Cherokee Furnace Company Survey, Hansford County, Texas, for the production of gas from a well located on Section 29. Each of the sections contains 320 acres of land, more or less, and is commonly called a "Spanish Section." There is no producing gas well situated on Section 27. On appeal, the Section 29 royalty owners maintain that the trial court erroneously unitized their inter-

est in Section 29 with Section 27. Agreeing with the Section 29 royalty owners, we affirm in part, reverse and remand in part, and reverse and render in part.

Reserve Oil, Inc., one of the appellees, owns the working interest under an oil and gas lease dated 14 August 1972, which covers Sections 27 and 29.[1] Appellee Permian Corporation has purchased gas from the well on Section 29. The remaining appellees, Caroline Elizabeth Richardson, Julius Pabst, Caroline Adriance Taylor, Douglas B. Taylor, Eva Amanda Taylor, Henry Adriance Taylor, Carroll T. Adriance, David M. Adriance, Jr., Margaret Susan Adriance Pote, James Franklin Parker, Jr., Jack Adriance Parker, Adrienne Poillon Barker, William A. Poillon and Jane A. Huff, own an undivided 1/16th non-participating royalty interest in and to Section 27. The appellants, Henry Trueheart Brown, William Knox Brown, Joseph Chenoweth Brown and Mary Hill Brown Whitcomb, own 2/3rds of an undivided 1/16th non-participating royalty interest in and to Section 29.[2]

On 14 August 1972, Grace Thoreson Foster and the trust estate of Arnold L. Thoreson, deceased, owned all of the surface and mineral estate in Sections 27 and 29 except for the outstanding 1/16th non-participating royalty interests in and to such Sections. On that date, Mrs. Thoreson and the trustees of Thoreson Trust executed an oil and gas lease to Dudley R. Stanley covering Sections 27 and 29. The lease contained a unitization provision. However, none of the Section 27 non-participating royalty owners nor any of the Section 29 non-participating royalty owners executed the oil and gas lease. Mr. Stanley assigned the lease, with certain reservations, to Northern

Natural Gas Company, which, in turn, assigned the lease, with certain reservations, to Basin Petroleum Corporation. After the assignment from Northern, Basin merged with Reserve Oil, Inc.

In 1973, Reserve drilled a well on Section 29, discovered gas, and began producing and selling that gas. Reserve drilled the well without obtaining a unitization agreement from the non-participating royalty owners. After it had begun producing and selling the gas, Reserve attempted to unitize the non-participating royalty interests by a division order. The Section 27 royalty owners executed the division order, but the Section 29 royalty owners, with one exception, refused to execute it. Reserve held in suspense the funds attributable to the 1/16th royalty interest and filed this action.

In its original petition, Reserve alleged, among other things, that it is an innocent and disinterested stakeholder, that it "is or may be exposed to double or multiple liability," and that it "has a reasonable doubt concerning the manner in which the 1/16th [non-participating royalty interest] should be apportioned, if at all, as between the two groups of defendants, and is faced with conflicting claims." Reserve tendered into court the funds it alleged to be attributable to the 1/16th royalty interest and asked the court to adjudicate the conflicting claims to those funds.[3]

Having purchased some of the gas runs from the well, Permian filed its bill of interpleader in this action. Permian alleged that it is a disinterested stakeholder and that there were conflicting claims to the 1/16th interest. Permian tendered into court the funds it alleged to be attributable to the

---

1. Reserve Oil, Inc. has changed its name to Getty Reserve Oil, Inc. Reserve's working interest ownership is subject to certain farm-out agreements and overrides which are not material to this action.

2. The remaining fractional interest of this 1/16th non-participating royalty interest is owned by Marjorie Williams McCullough, who is not a party to this appeal. That royalty owner executed a division order in which she agreed to the unitization of the two Sections.

3. The amount of money which is attributable to the Section 29 royalty owners' interest is the subject of a severed action. By a cross-action against Reserve, Permian and Northern Gas Company, cross-defendants, the Section 29 royalty owners claim that the gas has been and is being sold for less than market value at the well as required by the lease. On Reserve's motion, the cross-action was severed from this action. The severed cross-action is not a part of this appeal.

1/16th royalty interest, requested the court to adjudicate the conflicting claims and prayed for its costs and attorneys' fees.

In response to Reserve's action, the Section 29 royalty owners claimed that Reserve was not an innocent and disinterested stakeholder, and they further alleged that they had not ratified, adopted nor confirmed the 14 August 1972 lease and had not approved, condoned nor consented to communitization of Sections 27 and 29. They asked the court to determine that the two sections had not been unitized as to their royalty interest. They did not challenge Permian's innocent stakeholder position, but urged again that their royalty interest in Section 29 had not been unitized. The Section 27 royalty owners answered by claiming that the two Sections had been unitized and alleging that they were entitled to apportion their royalty interest across both sections, which would entitle them to ½ of 1/16th of the gas produced from the well located on Section 29.

All of the parties filed motions for summary judgment. In their respective motions, the parties claimed that there were no material issues of fact for the court to determine and that the adverse claims presented only questions of law. In its motion, Reserve asked the court to adjudicate the conflicting claims of the Section 27 and 29 royalty owners and award it attorneys' fees and costs. Permian also asked for an adjudication of the conflicting claims, attorneys' fees and costs. The Section 27 and 29 royalty owners claimed that, as a matter of law, they were entitled to prevail on their respective positions. In response to Reserve's motion, the Section 29 royalty owners claimed that Reserve was not an innocent and disinterested stakeholder. Given this joinder of issues, the trial court determined that Sections 27 and 29 were unitized and rendered judgment granting the motions of Reserve, Permian and the Section 27 royalty owners, denying the Section 29 royalty owners' motion, and apportioning the Section 27 and 29 owners' interests across both Sections.

Appealing from the judgment, the Section 29 royalty owners bring five points of error. Under their third point, they maintain that the trial court erred in granting "the Appellees' Motion for Summary Judgment" and in denying their own motion, "because neither the lessors in the oil and gas lease dated August 14, 1972, nor any other person had the right, power or authority to communitize or consolidate Appellants' royalty interest [in Section 29] with other lands without the express consent of Appellants." With their fifth point, they claim the trial court erroneously "apportioned royalties among all of the royalty owners in the two tracts on an acreage basis."

Conversely, the Section 27 royalty owners claim that the trial court correctly granted "Appellees' Motion for Summary Judgment . . . since the interests of [the Section 27 and Section 29 royalty owners] were pooled under a valid and enforceable community oil and gas lease." In support of their position, the Section 27 royalty owners rely on *French v. George*, 159 S.W.2d 566 (Tex. Civ.App.—Amarillo 1942, writ ref'd), and *Parker v. Parker*, 144 S.W.2d 303 (Tex.Civ. App.—Galveston 1940, writ ref'd). These two cases stand for the principle that if several owners of adjoining tracts of land unite in a single oil and gas lease with a third party for the development of oil or gas as a single tract, the royalties contracted for, in the absence of an agreement to the contrary, must be divided among the lessors in the proportion that the area owned by each bears to the total area covered by the lease, and the ownership of the tract upon which a producing well might be placed is of no consequence. That principle is not applicable in this instance.

■ It is undisputed that the Section 29 royalty owners did not execute the 14 August 1972 oil and gas lease from the Thoresons to Stanley. When the oil and gas lease was executed, the Thoresons owned the executive leasing rights to Sections 27 and 29. The Section 29 royalty owners' interest was created in a 1943 deed in which their predecessors in interest conveyed title to Section

29 to A. L. Thoreson. That deed reserved to the grantors a ¹⁄₁₆th royalty interest in all of the oil, gas and other minerals in the land. As stated in *Brown v. Smith*, 141 Tex. 425, 430, 174 S.W.2d 43, 46 (1943), the grantors did not reserve for themselves the right of leasing, and the grantee, therefore, possessed that right, but the grantee was not, as a consequence, authorized to pool the grantors' royalties with royalties from other land that might thereafter be included with it in a lease.

■ As a matter of law, the mere fact that the Thoresons were the holders of the executive leasing rights in and to Section 29 gave them no authority to pool, unitize or communitize the Section 29 royalty owners' interest with royalty interests of other property (*i.e.*, Section 27). As stated in *Montgomery v. Rittersbacher*, 424 S.W.2d 210, 213 (Tex.1968), "pooling on the part of the holder of the executive rights cannot be binding upon the non-participating royalty owner in the absence of his consent." There is no summary judgment evidence before us to show that the Section 29 royalty owners authorized the Thoresons to pool, unitize, or communitize their interest in Section 29 with Section 27, and the Section 27 royalty owners do not so contend. Under these circumstances, the 14 August 1972 lease executed by the Thoresons to Stanley did not effectuate a pooling, unitization or communitization of the Section 29 royalty owners' interest in Section 29 with Section 27.

■ The Section 27 royalty owners, however, contend that the Section 29 royalty owners ratified the lease through their pleadings by demanding royalties pursuant to the lease in their original answer, cross-action, and motion for summary judgment. The Section 27 royalty owners cite *Montgomery* for the proposition that a lease can be ratified through pleadings. We acknowledge the correctness of that basic proposition. In the *Montgomery* case, however, W. R. Montgomery owned a royalty interest in land which was covered by a lease which contained an entirety clause. His interest was purportedly pooled by that clause, even though the lessors had no authority to pool his interest, and the lessors argued that they specifically intended to leave his interest out of the pool. It was to Montgomery's advantage, however, to have his interest governed by the entirety clause, and he first offered to sign a ratification of the lease, then brought suit to enforce his rights under the lease as set out in the entirety clause. The Supreme Court held that bringing suit to enforce an unauthorized act constituted an implied ratification of that act, and Montgomery was entitled to a share of the pooled royalties.

In the present case, the Section 29 royalty owners have not attempted to enforce an unauthorized act. In *Mathews v. Sun Oil Company*, 425 S.W.2d 330, 333 (Tex.1968), the Supreme Court stated that "[t]he distinction between the inclusion of two tracts in one lease by the holder of a leasing power and the pooling of royalty interests is that the execution of a lease is an authorized act, while pooling and the cross-conveying of royalty interests is an unauthorized act." The Section 29 royalty owners acknowledge that the Thoresons had the authority to lease Section 29. In claiming ²⁄₃rds of ¹⁄₁₆th of the production under that authorized lease, they have not ratified the unitization provision of the lease, but have merely claimed what is reserved to them under the 1943 deed. They have not in their pleadings sought to enforce any unauthorized act purportedly pooling their royalty interests. In their pleadings, the Section 29 royalty owners have consistently challenged the authority of the Thoresons or anyone to pool, unitize or communitize their interest without their consent. We conclude that they did not ratify the unitization provision in the lease by their pleadings.

■ The Section 27 royalty owners further argue that the Texas Railroad Commission has a 640-acre gas well spacing requirement, that the acreage in Section 27 was used to meet the spacing requirement, and that "it is only equitable" that they be entitled to share in the production from Section 29. They cite no authority for this

position. The summary judgment evidence fails to show any action by the section 29 royalty owners which precludes them from exercising their established legal position. We overrule the equity argument.

■ Lastly, the Section 29 royalty owners assert that Reserve is not an innocent disinterested stakeholder and that the trial court erroneously awarded attorneys' fees to Reserve. When the interpleading party is responsible for the conflicting claims to the funds or property, that party is not entitled to attorneys' fees incurred in interpleading the claimants. *See Texas State Bank & Trust Co. v. Patteo*, 111 S.W.2d 1157, 1160 (Tex.Civ.App.—San Antonio 1937, no writ), and Annotation: Interpleader-Attorney's Fees, 48 A.L.R.2d 220 (1956). There is some evidence that Reserve was responsible for the conflicting claims. We conclude that Reserve did not conclusively establish its entitlement to attorneys' fees, and summary judgment on that point was improper. The Section 29 royalty owners' contention is sustained.

Accordingly, we affirm that portion of the trial court's judgment which decrees that the Permian Corporation's motion for summary judgment on its interpleader action is granted and awards the Permian Corporation an attorney's fee of $1,914.00 out of the funds on deposit in the registry of the court. We further affirm that portion of the judgment which decrees that "Marjorie Williams McCullough, is entitled to ½ × ⅓ × ¹⁄₁₆ of all future royalty payments under the above-described Thoreson # 1 oil and gas lease."[4]

We reverse that portion of the judgment which decrees that Reserve's motion for summary judgment on its interpleader action is granted and awards Reserve attorneys' fees from the funds on deposit in the registry of the court. Reserve's interpleader action and claim for attorneys' fees is remanded for a trial on the merits.

We reverse that portion of the judgment which decrees that the Section 27 royalty owners' motion for summary judgment is granted and awards them ½ of ¹⁄₁₆th of the royalty payments "under the 'Thoreson # 1' oil and gas lease executed on August 14, 1972 and recorded in Volume 66, Page 450, Lease and Contract Records, Hansford County, Texas." Judgment is rendered that the Section 27 royalty owners take nothing by their claim.

We further reverse that portion of the judgment which decrees that the Section 29 royalty owners' motion for summary judgment is denied and awards them ½ of ⅔ of ¹⁄₁₆th of the royalty payments "under the above described Thoreson # 1 lease"; and judgment is rendered that the Section 29 royalty owners own and hold ⅔rds of an undivided ¹⁄₁₆th non-participating royalty interest in and to Section 29, Block One (1), Cherokee Furnace Company Survey, Hansford County, Texas; that such royalty interest is not pooled, unitized or communitized with Section 27, Block One (1), Cherokee Furnace Company Survey, Hansford County, Texas, by virtue of the oil and gas lease dated 14 August 1972, executed by the Thoresons to Stanley; and that the Section 29 royalty owners did not ratify such lease by their pleadings in this action.

All of the remaining portions of the judgment which are inconsistent with this court's determination are reversed and decreed to be of no legal effect.[5] All costs are taxed against the Section 27 royalty owners.

COUNTISS, J., not participating.

---

4. On appeal, none of the parties challenged these portions of the judgment. Also, see footnote # 2 concerning the interest of Marjorie Williams McCullough.

5. No disposition is made of the funds tendered into court by Reserve and Permian, because the amount of money which is due to the Section 29 royalty owners for their interest in gas produced from the well located on such section is the subject matter of a severed cross-action by these royalty owners against Reserve, Permian and Northern Gas Company, cross-defendants.